IDA THOMPSON, Defendant in Error, *vs.* THE NORTHERN
HOTEL COMPANY, Plaintiff in Error.

*Opinion filed October 26, 1912—Rehearing denied Dec. 5, 1912.*

1. NEGLIGENCE—*what tends to show negligence in managing an elevator.* Evidence that the operator of an elevator suddenly started the car upward without looking out to see that no more passengers were about to enter tends to show negligence, where there was no door to close before starting and where the person injured was just stepping into the car as it started.

2. SAME—*when question whether passenger was guilty of contributory negligence is for the jury.* Whether the plaintiff was guilty of contributory negligence in attempting to enter an elevator without saying "going up," or otherwise calling the operator's attention, is a question for the jury, where the evidence shows that she was following closely another person whose presence was known to the elevator operator.

3. FELLOW-SERVANTS—*the question of fellow-servants is mixed one of law and fact.* Whether two servants of a common master are fellow-servants depends upon the facts of the particular relation and the application to those facts of the law defining fellow-servants, and in that sense the question is a mixed question of law and fact.

4. SAME—*elevator operator in hotel is not a fellow-servant of maid in charge of toilet room.* An elevator operator in a hotel is not a fellow-servant of a maid in charge of the ladies' toilet room in the hotel, notwithstanding the maid's duties required her to make several daily trips on the elevator, as the two are neither co-operating in a particular work nor so habitually associated as to enable them to exercise a mutual influence upon each other promotive of proper caution.

5. INSTRUCTIONS—*when instruction does not authorize jury to estimate damages not proved.* An instruction stating that if the jury shall find that the plaintiff "has sustained damages as charged in the declaration, then, to enable the jury to estimate the amount of such damages, it is not necessary that any witnesses should have expressed an opinion as to the amount of such damages, but the jury may themselves make such estimate from the facts and circumstances in proof, relating to the subject of the extent of plaintiff's damages," does not permit the jury to go outside of the evidence and determine damages susceptible of exact determination by proof.

6. SAME—*when an instruction as to disregarding testimony is properly modified.* An instruction authorizing the jury to disregard the uncorroborated testimony of any witness who they believe has "willfully and knowingly sworn falsely to any matter," etc., is properly modified by inserting the word "material" before the word "matter."

CARTWRIGHT and HAND, JJ., dissenting.

WRIT OF ERROR to the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding.

F. J. CANTY, and ROBERT J. FOLONIE, for plaintiff in error.

FRANCIS J. WOOLLEY, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This case comes to this court by writ of *certiorari* to the Appellate Court for the First District. Ida Thompson brought an action in case against the Northern Hotel Company for a personal injury and recovered a judgment in the superior court of Cook county for $5000, which judgment has been affirmed by the Appellate Court for the First District.

Plaintiff in error insists that the judgment should be reversed for the following alleged errors: (1) The trial court erred in refusing to direct a verdict of not guilty at the close of all the evidence; (2) the trial court erred in entering judgment against defendant and in denying its motion for new trial; (3) the trial court erred in its ruling upon instructions; (4) the Appellate Court erred in affirming the judgment of the trial court. Of these assignments of error the first and third present the only questions necessary to be considered.

There is no serious conflict in the evidence, and it tends to establish the following facts: Plaintiff in error operated the Great Northern Hotel in Chicago and used therein an elevator for the purpose of carrying employees of the hotel company from one floor to another in the hotel. The lower or first landing of the elevator was about two feet above the basement floor. The elevator was reached from the basement floor by two steps about nine inches in height and about the same in depth or width, and a lintel or threshold step about four inches wide. When the elevator was lowered to its place for the purpose of receiving or letting off employees the floor of the elevator was on a level with the four-inch lintel and made a continuous floor. The elevator was four feet wide east and west and about six feet north and south. The door opening into the elevator cage was about three feet in width and always remained open. About three feet north of this elevator was another elevator, and the space between the two elevators was a solid stone wall. The entrances to both elevators were on the east side of the hallway. A person standing in the hallway facing the elevator openings would be facing west. The northerly elevator was flush with the basement floor and was used for carrying trucks loaded with meat and provisions, and was made flush with the basement floor to facilitate the loading of trucks and the like from the basement. The south edge of the passenger elevator was flush with the door or opening through which it was entered. Half, or three feet, of the elevator extended north of the doorway and behind the stone wall. The operating device was north of the door opening, and when the operator was in his position to move the elevator about half of his body would be behind the stone wall while the other half would be in front of the door opening. Defendant in error was a colored woman, thirty-six years of age, and employed by plaintiff in error as a maid in the ladies' toilet room, located in the basement of the hotel building.

She had been so employed for ten months immediately prior to the time of the accident. In the course of her employment it became her duty to go to one of the upper floors of the hotel a number of times each day to secure a fresh supply of towels and soap for the use of the hotel patrons in the toilet room. She had gone up and down on the elevator several times each day during the time of her employment. On July 9, 1907, while in the discharge of her duty, she attempted to board the elevator for the purpose of going to the upper floor for a supply of toilet articles. The elevator was standing at the basement landing. She was standing in the hallway, about midway between the two elevators, before she attempted to get upon the elevator. In her position as she stood there the stone wall obstructed the view of the operator of the elevator and he could not see her without putting his head out of the opening. Another employee, a plumber, entered the elevator just in front of defendant in error. She testified that she was so close upon the plumber as he entered the elevator that she could have touched his heels with her toe. After the plumber entered the elevator, and just as defendant in error was making a step to get upon the elevator, the elevator, without warning, started upward, so that defendant in error's foot passed over the top of the lintel and went into the opening between the threshold of the door and the bottom of the rising elevator. She fell on her stomach on the floor of the elevator, with her feet and limbs extending out from the elevator floor. The elevator rose rapidly and her legs were broken by coming in contact with the upper casing of the elevator door.

The declaration is in one count, and charges that plaintiff in error "so carelessly and negligently ran, managed, operated and controlled the said elevator, and the operating machinery and power controlling the same, that the said elevator was thereby caused to be suddenly started, where-

by the plaintiff was then and there caused to trip and fall upon the floor of said elevator." Plaintiff in error contends that its peremptory instruction should have been given at the close of all the evidence, and in support of this contention argues that there is no proof tending to prove the negligence charged in the declaration, that defendant in error was guilty of contributory negligence, and that she was a fellow-servant with the operator of the elevator. The first and second propositions above mentioned may be considered together.

As already stated, the testimony of the few witnesses who have any knowledge of the accident is in substantial agreement. Defendant in error testifies that she had ridden on this particular elevator two or three times every day; that the operator in charge at the time of the accident was a colored man by the name of LeRoy Williams, and that he had been running the elevator two weeks before the accident. She testifies that she was standing in front of the partition wall between the two elevators, wait- ing for the elevator to come down; that when the elevator landed she started to enter, going up the steps at an angle from the point where she stood; that she did not say anything to the elevator operator indicating that she wanted to go up; that as she made her last step, intending to land on the elevator, the elevator suddenly started, causing her to trip and fall forward onto the floor of the elevator; that the elevator did not stop when she fell but kept right on going up; that she could not get her feet into the elevator before she struck the upper casing of the door, because she did not have time; that Sydney Addyman, who was known as the plumber, entered the elevator just ahead of her. Addyman testifies that as he started toward the car he saw defendant in error standing in front of the wall between the two elevators; that her position was such that the operator of the elevator could not then see her; that he entered the elevator, and he next saw defendant in er-

ror on her hands and knees on the floor of the elevator. LeRoy Williams, the operator of the elevator, testified that he had seen defendant in error several times each day on his elevator; that on the occasion of the accident he did not see her until after his car had started and she was falling or crawling into the car. He says that at the time the plumber entered he did not see anyone else; that he stopped the elevator as soon as he could after he discovered defendant in error on the floor of the car. Defendant in error and Addyman both testify that the elevator started quickly. Whether suddenly starting the elevator without observing that defendant in error was then immediately in the door, with her foot raised in the act of stepping onto the elevator, without looking to see whether everything was all right for the elevator to go up, was negligence, was, we think, a question of fact for the jury. The fact that this elevator was operated without closing the door where defendant in error entered would seem to impose on the operator a duty to look and ascertain, before starting his elevator, that no one was in a position to be hurt by the movement of the elevator. If it had been the practice to close the door, and the operator of the elevator started his elevator upward without closing the door or taking other means to know that no one was in danger, and an injury resulted, undoubtedly his failure to close the door would be regarded as an act of negligence. In such case the closing of the door would secure the safety of those within as well as those without and prevent any person from being in the act of getting on or off the elevator as it moved upward. There being no door here in use, we think it not unreasonable to hold that the operator of the elevator owed a duty to persons having a right to use the elevator, to look and ascertain, before starting his elevator, that no one was in a position to be hurt by his starting the elevator. He controlled the power that ran the elevator, and he, only, could know when it would start. It is perfectly apparent

that he did not look at the door before starting the elevator. If he had, he must have seen defendant in error, as she was then in a position to almost place her foot on the floor of the elevator. If defendant in error had been a fraction of a second earlier and had gotten one foot upon the floor of the elevator while the other was out, and the elevator had started suddenly, as it did, she would probably have been thrown backward out of the elevator instead of falling, as she did, onto its floor. The operator of the elevator not having his eyes turned toward the door of the elevator would not have known of her perilous situation in the position supposed. He could not see her any better without looking in the one position than in the other. We think that the failure of the operator to use reasonable care to discover the perilous situation of defendant in error, together with the sudden starting of the elevator upward without any warning, tends to prove the averment in the declaration that plaintiff in error so carelessly and negligently ran, operated and controlled said elevator that the injury resulted to defendant in error.

There is another view that may be taken of the evidence, under which the court below was justified in refusing to direct a verdict for plaintiff in error. The evidence is uncontradicted that when the elevator started it shot up, and was not stopped until it had passed the upper casing of the door two or three feet. In the meantime defendant in error's limbs had been broken with the upward force of the elevator and the flesh torn from the bones. The fact that the elevator was not stopped until after the accident and it had gone two or three feet above the top of the door, indicates that the operator of the elevator had probably not observed defendant in error until her limbs collided with the door. If he had looked immediately after she fell, and he had the elevator properly under control, he should have stopped it before the top of the door was reached. The elevator was either going upward very rap-

idly or the operator was not paying attention to his business. In either event the negligent character of his conduct was a question for the jury.

The only basis in the evidence for the contention that defendant in error was guilty of contributory negligence is her omission to say "going up," or by some other indication advise the operator of her intention to enter the elevator. There would be more force in this contention were it not for the fact that defendant in error was intending to enter the car just behind another person whose presence was known to the elevator boy. It cannot be said to be negligence in a person to enter an elevator when the door is open and the elevator at rest, immediately behind other persons who are entering, without advising the operator of the elevator of the intention of such person to enter. If a number of persons are in line entering an elevator, those in the rear, following as closely as they conveniently can those in front, have a right to assume that the elevator will not be moved until all are inside or until it is loaded. The question whether plaintiff in error was guilty of the negligence charged in the declaration, as well as the contributory negligence of defendant in error, were questions of fact for the jury.

Plaintiff in error next contends, under this assignment of error, that defendant in error and the operator of the elevator were fellow-servants. The definition of fellow-servants is a question of law. (*Hartley* v. *Chicago and Alton Railroad Co.* 197 Ill. 440.) The particular relation of two servants of the same master in a given case is a question of fact, hence whether two servants of a common master are fellow-servants depends upon the facts of the particular relation and the application of the law defining fellow-servants to those facts, and in that sense the question is a mixed question of law and fact. (*Lake Erie and Western Railroad Co.* v. *Middleton,* 142 Ill. 550.) Under the rule established by numerous decisions of this court, to

create the relation of fellow-servants the servants must be directly co-operating with each other in a particular work at the time of the injury, or their usual duties must be such as to bring them into habitual association, so as to afford them the power and opportunity of exercising a mutual influence upon each other promotive of proper caution. (*Bennett* v. *Chicago City Railway Co.* 243 Ill. 420.) There is no basis whatever for the contention that defendant in error and the operator of the elevator were fellow-servants under the first branch of the rule. They were not co-operating with each other in any particular work. They were in different departments and under different superiors. The fact that one operated the elevator upon which the other rode in the discharge of her duties did not bring them into co-operation with each other in the performance of the duties of either. Nor do we think that the fact that defendant in error frequently rode up and down on the elevator which LeRoy Williams was operating can be said to have brought them into such association with each other in the discharge of their duties that they might reasonably exercise an influence over each other promotive of care. The duties of these two employees were so totally different that neither could be supposed to know whether the other was exercising proper care in the discharge of his duties. The maid of the toilet room would not be supposed to be able to counsel and advise the operator of an elevator as to the safest mode of managing the machine, or to exercise any influence over him promotive of care, unless she had such knowledge of the proper manner of operating an elevator as to determine when it was properly run and when it was not. Where two servants are brought together in direct co-operation in the performance of a particular work, they have an opportunity, and being engaged in the same line of work they have the power and ability, to exercise an influence over each other promotive of proper caution, and where they are engaged in different lines of employ-

ment and their usual duties bring them into habitual association, the association must be sufficiently personal to furnish the same opportunity and power to exercise an influence upon each other promotive of proper caution. (*Bennett* v. *Chicago City Railway Co. supra.*) We do not think that defendant in error and the operator of the elevator were, as a matter of law, fellow-servants.

Plaintiff in error complains of instruction No. 11 given at the instance of defendant in error. That instruction is as follows:

"If, from the evidence in the case and under the instructions of the court, the jury shall find the issues for the plaintiff, and that the plaintiff has sustained damages as charged in the declaration, then, to enable the jury to estimate the amount of such damages, it is not necessary that any witnesses should have expressed an opinion as to the amount of such damages, but the jury may themselves make such estimate from the facts and circumstances in proof, relating to the subject of the extent of plaintiff's damages."

The objection urged against this instruction is that it permits a recovery for an item of $500 claimed in the declaration to have been expended in endeavoring to cure the defendant in error of her injuries. In other words, it is contended that this instruction permitted the jury to go outside of the evidence and determine damages which were susceptible of exact determination from the evidence. If there was no evidence of expenditures by defendant in error in endeavoring to be healed of her injuries, then the jury could not find as to that item, from the evidence, that she had sustained damages as charged in the declaration, as the instruction requires, in its first sentence, shall be done before the jury would be warranted in awarding her any such damages. In other words, the instruction requires proof of the injury, as charged in the declaration, from the evidence, and the absence of any evidence as to

the amount of her expenditures would indicate an abandonment by her of that item of damages. A similar instruction was criticised in *North Chicago Street Railway Co. v. Fitzgibbons,* 180 Ill. 466, and the instruction was sustained, and similar instructions have been approved often by this court. (*Richardson* v. *Nelson,* 221 Ill. 254; *Keokuk Bridge Co.* v. *Wetzel,* 228 id. 253.) We do not think that the instruction would be understood by the jury as authorizing them to estimate and allow damages capable of pecuniary measurement without any evidence upon which to base such estimate.

Plaintiff in error complains of the refusal of the court to give instruction No. 31 and of the modification of instruction No. 25. Instruction No. 25 in its original form was erroneous and misleading and might have been refused. It told the jury that if any witness had willfully and knowingly sworn falsely as to any matter affecting liability or damages, then the jury might disregard all of the evidence of such witness, except in so far, if at all, as the evidence of such witness is corroborated by other credible evidence appearing in the case or by facts and circumstances appearing from the evidence. The court modified the instruction by inserting the word "material" between the words "any" and "matter." The modification of the instruction was necessary to make it conform to the law upon that subject. Instruction No. 31, which was refused, contained an abstract proposition of law not applicable to the facts of this case, and it was therefore not error to refuse it. That instruction told the jury that an employer is not bound at all times to be on his guard against the "unusual, unexpected and not to be foreseen, but is bound only to anticipate that which a person of ordinary prudence and foresight would anticipate as natural and probable, and if you believe, from the evidence, that the plaintiff's entry into the elevator in question was unexpected and a thing not to be anticipated as probable or likely to occur, then

the defendant was not bound to guard or ward beforehand such actions of the plaintiff." There is nothing in this case from which it can be said that the entry of defendant in error into the elevator which plaintiff in error had provided for her use and that of other employees was an unexpected and unusual event. The principle announced in the instruction has no application to the facts of this case.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

CARTWRIGHT and HAND, JJ., dissenting.