Mrs. Ernest Wever, Appellee, v. J. H. Staggs, Appellant.

Gen. No. 8,529.

558

Opinion filed February 1, 1932.

BOYD, RATCLIFF & WEBER, for appellant.

BURNETT M. CHIPERFIELD, CLAUDE E. CHIPERFIELD and ROBERT B. CHIPERFIELD, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

In an action on the case appellee recovered a judgment against appellant for the sum of $2,571 for personal injuries received by her resulting from an automobile accident.

Appellee, a woman 51 years of age at the time of the accident, resided at Galata, a small village in the State of Montana where her husband was the station agent for the Great Northern R. R. Co. Before the accident she and her husband had driven in an automobile from their home in Montana to Mount Vernon, Illinois, to attend the wedding of their son at that place. On their way back to Montana they stopped to visit a relative by the name of Bowman living about four or five miles east of Lewistown, Fulton county, Illinois. On the morning of the accident they left Mr. Bowman's place shortly after seven o'clock. Her husband was driving the automobile at a speed of about 20 miles per hour, according to the testimony of appellee, on the State highway No. 41, proceeding north and as they approached the Village of Avon, a car, driven by appellant, came out of a side road hidden by an embankment eight feet high and collided with the car in which appellee was riding whereby she

received the injuries for which she is attempting to recover damages. The side road led to a cemetery on the top of a hill or bluff and ran through a cut to the State highway. The evidence shows that a person driving from the cemetery through this cut to the State highway could not see any car approaching the cemetery road until he had passed the embankment which was but a few feet from the main road. Cahill's St. ch. 95a, ¶ 34(3), provides that motor vehicles entering upon or crossing a highway designated by law as one of Routes 1 to 46 inclusive shall come to a full stop as near the right-of-way lines as possible before driving onto the paved portion and regardless of direction.

Appellant testified that in going down the hill he drove his car very slowly and not faster than a man could walk; that when he got down to the pavement he looked and saw the car in which appellee was riding coming about the time he drove onto the pavement and that it was then about 250 feet south of him and he should judge it was coming at a speed of at least 45 miles an hour; that he turned right around on the pavement as quick as he could and hadn't hardly got around when the approaching car struck the front wheel and front fender of his car; that the other car ran up the side of the bank within four feet of the top and turned over; that just before coming out of the embankment he did not stop and he was right on the pavement when he looked up and saw the other automobile coming. It is clear from his own testimony that in coming out from behind the embankment appellant did not stop his car nor look to see if another car might be coming on the State highway in compliance with the command of the statute but drove onto the State highway without looking and without stopping in front of the automobile in which appellee was riding. If the car in which appellee was riding was in fact approaching the side road at a speed of 45 miles

per hour, as he testified, all the more reason why he should not have taken the chance of driving out in front of it. The collision occurred almost instantly as he drove upon the pavement and it is very doubtful whether he had any opportunity to judge the speed of the approaching car. However, a speed of 45 miles an hour on a paved road under the circumstances shown was not unreasonable, even if the car in which appellee was riding was going at that speed. The liability of appellant is clear.

Where the liability of a defendant is conclusively shown and the jury could not have found any other verdict under the evidence, the court will not reverse the judgment on technical errors but only when substantial and material errors have intervened by which his rights under the law have been jeopardized.

One of the errors assigned is that there was no evidence tending to show that appellee was in the exercise of due care for her own safety. She was riding in the automobile driven by her husband at a reasonable rate of speed along the paved highway where the car in which she was riding had the right of way over cars approaching the highway from side roads. The cemetery road was hidden from view and she had no knowledge thereof and could not see an automobile on that road. The law did not compel her to anticipate that there might be a side road hidden from view and that a car might be driven from said road onto the pavement in front of the car in which she was riding and under these circumstances no duty involved upon her to warn her husband that such might be the case. It was for the jury to determine from all the evidence in the case whether she was exercising due care for her own safety.

The principal contention of counsel for appellant is that the court erred in giving certain instructions for appellee and in refusing to give certain instructions offered on behalf of appellant. Some of the instruc-

tions given on behalf of appellee quote different sections of the statute under the Motor Vehicle Act, Cahill's St. ch. 95a, ¶ 1 *et seq.*, as abstract propositions of law without applying them to the facts in the case. While the rule is that such instructions are erroneous, yet it has also been held that the giving of them is not always reversible error. Under the facts in the present case there was no conflict in the evidence as to the liability of the defendant and he could not have been harmed by these instructions.

Instructions 13 and 14 given on behalf of appellee inform the jury that in estimating her damages they might take into consideration whether her injuries are permanent or temporary and it is contended that there is no evidence that her injuries were of a permanent character. No doctor testified in the case. Appellee testified that her left knee was cut open to the bone and that ligaments thereof were torn; that she was internally injured on the right side commencing with the breast bone and extending around to the rear; one wrist was dislocated; her right knee was dislocated and crushed and her left one was bruised but not broken; that after the accident she was taken to a doctor's office in Avon who reduced the dislocations, sutured the left knee with eight stitches, bandaged it up and gave her medicine to take internally; that she was then taken to a hotel where she stayed until afternoon when she was taken to the railroad station to take the train for her home in Montana; that she had to change railroads at Galesburg and again at St. Paul; that they took her from one train to the other in a wheel chair; that on the different trains she stayed in the Pullman berths; the accident happened on Tuesday and she reached home on the following Friday; when she arrived in Galata, Montana, she was taken from the station to her home where she was put to bed and remained in bed three weeks during which time she had a neighbor lady take

care of her and paid her $1 a day for her services; Galata was a small village having about 50 inhabitants and is 24 miles from the City of Selby, Montana; there was no resident doctor at Galata and the nearest doctor lived at Selby; she visited a doctor in Selby once to have the stitches taken out of her knee; this doctor gave her some medicine and rebandaged her wrist; she wore this bandage about a month; after she was able to get out of bed she had to sit in a chair for about three or four weeks before she was able to walk on crutches because the pain in her chest kept her from using them and also her shoulder couldn't stand the weight on the crutches; it was three or four weeks after she left her bed before she was able to use the crutches; she used crutches for three or four more weeks and after that occasionally when she had to go down town; from the time she received the injury she has suffered pain every day from the knee which pain keeps her from sleeping; she has difficulty with the knee in walking and if she gets a little overbalanced she falls down; she cannot bear the weight of her body on that limb without pain; that she cannot take a deep breath without pain; her arm is very weak and she cannot lift a pail of water; she can't do any scrubbing or washing nor sew very long at a time; since the time of her accident she has been almost a nervous wreck; these conditions do not improve and her knee in particular seems to get worse instead of better; it has a dead, numb sort of feeling but if anything accidently touches it, it pains severely.

The accident occurred June 26, 1928. The trial took place in February, 1930. Nearly two years had elapsed between the time of the injury and the trial. The testimony of appellee which is entirely uncontradicted shows that she has during that time continually suffered pain and that the injury to her knee is getting worse instead of better. The evidence shows

that appellee was in good health before the injury and had none of the impairments of her health that she has suffered since the accident. In the case of *North Chicago Street R. Co. v. Shreve,* 171 Ill. 438, the court held:

"It is not contended that this instruction fails to state the law correctly, but the objection is that there is no evidence of permanent injury upon which it can be based. It is true, no medical expert testified as to the injury being permanent, but the plaintiff testified on the trial of the case nearly three years after the injury was received and after the miscarriage occasioned by the injury as follows: 'Before that time I was always very healthy, and since that time my health has been almost a total wreck. . . . It is a complete nervous shock. It has left me that I am very seldom or ever without a headache. It is always in the top of my head and right down the back of my neck at the base of the brain. Before this fall I never had a spell of sickness in my life. . . . I have headaches also, and my strength isn't what it used to be.' This testimony was uncontradicted and at least tended to prove that the injury was permanent. . . . The language of the plaintiff that since the time of the accident 'my health has been almost a total wreck,' conveys the idea that her health has been ruined or destroyed. These are the words of the plaintiff who received the injury—the only person who could describe her sufferings and injuries, and the effect the injuries had had upon her health so long a time after the accident. The jury saw the witness upon the stand and had an opportunity to form some estimate of her condition of health from her appearance in connection with her testimony as to its serious and permanent character. The physician who attended her after the accident and during the miscarriage testified that she suffered a great deal of

pain. . . . This testimony, if true, when all considered, in our opinion was sufficient to justify the instruction. Moreover, under the instruction the question of permanent injury was to be taken into consideration in assessing plaintiff's damages.''

Under the authority of the above case we are of the opinion that there was sufficient evidence on which to base these instructions insofar as they informed the jury that they might determine from the evidence whether the injuries were permanent or not which was all that the instruction assumed to do.

It is also urged that these instructions were erroneous because there was no allegation in the declaration that the injuries were permanent. It has frequently been held that a declaration need not describe the injury in all its seriousness but it is sufficient if the injury is merely described generally without pointing out its permanency. *Springer v. Schultz,* 205 Ill. 144; *Chicago v. Sheehan,* 113 Ill. 658; *Chicago City Ry. Co. v. Hastings,* 136 Ill. 251; *North Chicago Street Ry. Co. v. Brown,* 178 Ill. 187; *Chicago & Alton R. Co. v. McDonnell,* 194 Ill. 82; *Little v. Peoria Ry. Co.,* 215 Ill. App. 385.

The thirteenth instruction, however, also informs the jury that they may take into consideration any loss of time, loss of wages or employment. In this respect this instruction was clearly erroneous as there was no evidence of loss of time, wages or employment. Appellee was not employed or receiving any wages at the time of the injury but was simply a housewife attending to her duties as such. However, analogous instructions have not always been held to cause reversible error. In the case of *Little v. Peoria Ry. Co., supra,* it was said: ''The fifth and eleventh instructions, given for plaintiff, allow the damages to be fixed by the jury without any witness estimating the amount, but the jury were to act upon the proof in

connection with their own observation and experience. It is argued that the amount expended by plaintiff for the services of her physician and her loss by reason of inability to attend to her business affairs were susceptible of direct proof, and that it was error to permit the jury to estimate those items of injury by their own observation and experience. We think these instructions in that respect were incorrect. Cases where such an instruction were given have been reversed on that account by the Supreme Court and by several of the Appellate Courts, including this court, but the modern tendency is to regard such an incorrect instruction as not necessarily reversible error.''

In the above case the cases of *North Chicago Street R. Co. v. Fitzgibbons,* 180 Ill. 466, *Keokuk & Hamilton Bridge Co. v. Wetzel,* 228 Ill. 253, and *Thompson v. Northern Hotel Co.,* 256 Ill. 77, are cited in this connection. In the *Fitzgibbons* case an instruction was given that to enable the jury to estimate the amount of damages it is not necessary that any witness should have expressed an opinion as to the amount of such damages but the jury may themselves make such estimate from the facts and circumstances in proof and by considering them in connection with their knowledge, observation and experience in the business affairs of life. The objection to the instruction was that it authorized the jury to act upon facts not in evidence but within their knowledge. The court held in that case: ''We do not think the jury would understand from the instruction that they might consider injuries outside of the evidence, which they might individually know of.''

In the *Wetzel* case, *supra,* a similar instruction was given and the objection urged to it was that certain damages were charged in the declaration, such as medical attendance, loss of time, etc., to which the rule announced in the instruction should be held to

apply and it was held that the giving of it was not reversible error, because while the instruction given should have been limited so as to apply only to the physical injury which was sustained by the appellee, in view of the severe character of appellee's injury and the amount of the verdict, the jury were not misled by the instruction.

In the *Thompson* case, *supra,* an instruction was given to the effect that if from the evidence the jury shall find the issues for the plaintiff and that the plaintiff has sustained damages *as charged in the declaration,* then, to enable the jury to estimate the amount of such damages it is not necessary that any witnesses should have expressed an opinion as to the amount of such damages, but the jury may themselves make such estimate from the facts and circumstances in proof, relating to the subject of the extent of plaintiff's damages. The court held: "The objection urged against this instruction is that it permits a recovery for an item of $500 claimed in the declaration to have been expended in endeavoring to cure the defendant in error of her injuries. In other words, it is contended that this instruction permitted the jury to go outside of the evidence and determine damages which were susceptible of exact determination from the evidence. If there was no evidence of expenditures by defendant in error in endeavoring to be healed of her injuries, then the jury could not find as to that item, from the evidence, that she had sustained damages as charged in the declaration, as the instruction requires, in its first sentence, shall be done before the jury would be warranted in awarding her any such damages. In other words, the instruction requires proof of the injury, as charged in the declaration, from the evidence, and the absence of any evidence as to the amount of her expenditures would indicate an abandonment by her of that item of damages. A similar instruction

was criticised in *North Chicago Street Railway Co. v. Fitzgibbons,* 180 Ill. 466, and the instruction was sustained, and similar instructions have been approved often by this court. (*Richardson v. Nelson,* 221 Ill. 254; *Keokuk Bridge Co. v. Wetzel,* 228 id. 253.) We do not think that the instruction would be understood by the jury as authorizing them to estimate and allow damages capable of pecuniary measurement without any evidence upon which to base such estimate.''

This thirteenth instruction in the case at bar, while it permits the jury to take into consideration loss of time, wages or employment, also limits their consideration to only such damages as were shown by the evidence. As there was no evidence of any damages from loss of time, wages or employment, in view of the amount of the verdict, it will not be presumed that the jury took into consideration any damages therefor as the verdict is not excessive for the injuries actually received. In view of the facts and circumstances shown by the evidence in this particular case, we are of the opinion the judgment should not be reversed for this error in the instruction.

It is also urged that the court erred in refusing to give the second and eighth refused instructions offered on behalf of appellant. The second refused instruction tells the jury that if they believe from the evidence that the defendant stopped his car near the right of way line of State highway No. 41 and that in driving his said car upon said highway he acted in a manner such as a reasonably prudent man would have acted under the same or similar circumstances then they should find the defendant not guilty. The eighth refused instruction told the jury that if they believed from the evidence that defendant stopped his car as near the right of way line of State highway No. 41 as possible then the jury should find him not guilty of having been negligent in failing to stop his car before

entering upon the paved portion of the road even though they might believe the defendant failed to stop immediately before entering upon the concrete slab which constituted the paved portion of the highway. The evidence shows conclusively that appellant never stopped his car at any time or place after he started down the hill until he collided with the car in which appellee was riding on the State highway. There was no evidence on which to base these instructions and it was not error to refuse them..

The judgment of the circuit court is affirmed.

*Affirmed.*