Rehearing granted and reargued October 6, decided December 2, 1913.

## PUTNAM *v.* PACIFIC MONTHLY CO.*

(130 Pac. 986; 136 Pac. 835.)

**Master and Servant—Injuries to Servant—Construction of Complaint —Existence of Relation.**

1. A complaint, in an action for death, alleging that decedent was employed by defendant on the fourth floor of a building, and that in order to reach her work she was compelled to use an elevator operated

*The authorities on the measure of duty owing to servants with respect to elevators which they are required or permitted to use for personal transportation are reviewed in a note in 18 L. R. A. (N. S.) 911.

On the duty to employees as to inspection of elevator, see note in 21 L. R. A. (N. S.) 592.

As to the liability of a master for injury to employee caused by defective elevator and negligence of fellow-servant, see note in 2 L. R. A. (N. S.) 647.

For master's liability for injury to employee caused by elevators uninclosed as required by statute or ordinance, see note in 15 L. R. A. (N. S.) 784.

On the question whether the operator of an elevator is a fellow-servant of other employees of the establishment, see note in 41 L. R. A. (N. S.) 156.

As to the relationship to private corporation or association for profit which will disqualify a juror in a civil action in which it is interested, see note in 40 L. R. A. (N. S.) 978.          REPORTER.

by another employee of defendant whose negligent operation of the elevator caused decedent's death, charges that her injuries occurred while acting as a servant.

### Master and Servant—Existence of Relation—Injury While Being Carried to Work.

2. If, as a part of the compensation to an employee, the carrier transports him to and fro between certain points when not engaged in actual service, or when the travel is not closely connected with the employment, the employee is then a passenger, but if the carriage is merely for the mutual convenience of the parties, or either of them, in connection with the master's business, the relation of passenger and carrier does not exist between them, so that, where an employer furnishes an elevator for the use of employees in the upper stories of a building, the carriage of the employees on the elevator to their work is the act of an employer and not of a carrier, and the measure of care due from the employer is the same as in any other case founded on the same relation.

### Master and Servant—Negligence of Master—Care as to Operation of Elevator.

3. Where a master furnishes an elevator for the use of employees employed in the upper stories of a building, he is only bound to use ordinary care and prudence commensurate with the danger to be reasonably apprehended, but not the degree of care, required of a common carrier of passengers, as he is only bound to exercise ordinary care to provide a reasonably safe place and reasonably safe appliances for the convenience of the employees in connection with the work.

[As to liability of owners of elevators when used by employees, see notes in 56 Am. St. Rep. 806; Ann. Cas. 1912D, 531.]

### Master and Servant—Who are "Fellow-servants."

4. One who is employed on the fourth floor of a building is a "fellow-servant" of the operator of an elevator which is run by the master to transport employees to and from the floor where they work.

### Jury—Interest of Juror—Stockholder in Insurance Company.

5. Under Section 122, subdivision 4, L. O. L., making the interest of a juror in the result of an action ground of challenge for implied bias, a juror who is a stockholder or interested in an insurance company warranting against loss by the injury forming the basis of pending litigation would be subject to challenge.

### Trial—Examination of Juror—Discretion of Court.

6. Under Section 856, L. O. L., providing "that the court may exercise a reasonable control over the mode of interrogation so as to make it as distinct, as little annoying to the witness, and as effective for the extraction of the truth as may be," a prospective juror may be interrogated as to his interest, but the party interrogating him has no right to abuse his privilege, or try to prejudice the jury with irrelevant matter and in an action against an employer for the death of an employee, in which defendant was insured against losses of that kind, it was error for the court to allow questions to the jurors which would tend to prejudice the case in the minds of the jury because of the existence of such insurance.

## On Rehearing.*

**Carriers — Master and Servant—Passengers—Employees—Injuries—Nature of Relation.**

7. The relation of an office clerk to a corporation, as affecting the degree of care required in the operation of an elevator, on which the clerk, at 8:20, was being carried to her place of work, where her duties began at 8:30, was not that of servant, but that of passenger.

**Carriers—Passengers—Care Required—Elevators.**

8. The owner of a building operating an elevator therein for the benefit of the occupants of the building and the public generally owes to its employee, as a passenger, when being carried to her place of work in the building, the highest degree of skill and foresight consistent with the efficient operation of the elevator.

**Master and Servant—Injuries to Servant—"Fellow-servant."**

9. The operator of an elevator is not a "fellow-servant" with an office clerk who, while on her way to her work, was killed through the negligence of the operator.

From Multnomah: William N. Gatens, Judge.

Statement by Mr. Justice Burnett.

This is an action by Myrtle Putnam, administratrix of the estate of Mabel Putnam, deceased, against the Pacific Monthly Company, to recover damages for causing the death of plaintiff's intestate.

For the purpose of its enterprise the defendant occupied the fourth floor of a building in the City of Portland, and had the exclusive control and management of an elevator used by the general public and its employees in going to and from its place of business. Among other things, the complaint alleges: "That on September 2, 1910, Mabel Putnam was employed by the above-named defendant, the Pacific Monthly Company, in its office on the fourth floor of said building,

---

*As to the measure of duty owing to servants with respect to elevators which they are required or permitted to use for personal transportation, see note in 18 L. R. A. (N. S.) 911. And on the question of liability for injury to elevator passenger, generally, see notes in 25 L. R. A. 33, and 2 L. R. A. (N. S.) 744. The question whether the operator of an elevator is a fellow-servant of other employees of the establishment is treated in a note in 41 L. R. A. (N. S.) 56.

Reporter.

and in order to reach her work as such employee was compelled to take and use said elevator in going from the first floor of said building to the fourth floor thereof; that on said day, while going to her work as such employee, she entered said elevator on the first floor of said building, and which was at the time being operated by one J. P. Gerardy, the regular elevator operator in the employ of the said defendant, the Pacific Monthly Company; that when said elevator reached the fourth floor of said building the said operator thereof opened the door for the purpose of allowing and permitting the said Mabel Putnam to pass from said elevator on to the floor of said building, and, while in the act of passing out of said elevator as aforesaid, the said elevator operator so unskillfully, negligently and carelessly manipulated, handled and operated said elevator that the same suddenly and without warning to the said Mabel Putnam began to descend very rapidly, and continued so to descend until it reached a point between the third and second floor of said building, and the said Mabel Putnam was thereby caught between said elevator and the floor of the third and the ceiling of the second floor and was fatally wounded, crushed and mangled, from the effects of which she immediately died.'' The compulsion to use the elevator and the negligence of the operator set forth in this allegation are both denied; otherwise it is admitted. It is alleged by the plaintiff and denied by the defendant that the latter in running and operating the elevator, as stated in the complaint, was a common carrier in transporting employees and the general public from the first floor to the fourth floor of the building.

The defendant's occupancy of that story with the control and management of the elevator and its use by the general public and its employees in going to and from the place of business were admitted by the

answer. The allegation of damage to the estate of Mabel Putnam was traversed. The substance of the affirmative defense was that the elevator operator and the decedent were fellow-servants and that the injuries sustained by the latter were due to the negligence and carelessness of the associate employee of the deceased and not of the defendant. This in turn was traversed by the reply. A jury trial resulted in a verdict and judgment for the plaintiff, from which the defendant appeals.                                        Reversed.

For appellant there was a brief over the names of *Messrs. Griffith & Leiter, Mr. F. J. Lonergan* and *Mr. Clarence L. Eaton,* with an oral argument by *Mr. Rufus A. Leiter.*

For respondent there was a brief over the names of *Messrs. Manning & White* and *Mr. Edward S. J. McAllister,* with an oral argument by *Mr. Samuel White.*

Mr. Justice Burnett delivered the opinion of the court.

The plaintiff's theory, adopted by the court in the trial of the cause, is that, as a matter of law, the defendant in running and operating the elevator as stated in the complaint was a common carrier of passengers and bound to exercise, as such, a high degree of care to those using the elevator. The contention of the defendant is that the operation of an elevator is not a matter of common carriage; and that, if it were, the relation of passenger and carrier did not exist between decedent and defendant at the time of the accident, but, on the contrary, that she was an employee to whom its measure of duty was to exercise only ordinary care in providing for her a reasonably safe appliance by which to reach her employment. Over the exception of the defendant the court took from the jury the

defense of the negligence of a fellow-servant by instructing them peremptorily that the decedent and the operator of the elevator were not fellow-servants and directing the jury not to consider the defense of the negligence of one standing in that relation to plaintiff's intestate.   The court, likewise disregarding the objection of the defendant, instructed the jury in consonance with the theory that the deceased was a passenger and the defendant a common carrier of passengers from which relation sprang the duty of the defendant to use a high degree of care to prevent accidents.

The authorities are not agreed upon the question of whether an elevator is an appliance of common carriage.   A wide distinction in fact exists between the skyscrapers of New York, Chicago, and other large cities in which many elevators are in constant use, and a small building in a country town having an elevator for one or two stories.   In the one case the elevators in a building may carry thousands of persons daily, while in the other it will be only used by comparatively few in a week.   We do not find it necessary to establish an unvarying rule on the subject in this instance.

1. Conceding, however, as a postulate, for the purposes of this case only, that the defendant was a common carrier in the operation of the elevator, it does not necessarily follow that it sustained that relation to the decedent, or that there was due to her from the defendant that high degree of care incumbent upon a common carrier as to its passengers.   Neither is it necessary to indulge in a discussion of whether or not the decedent was at the time of the injury a passenger or an employee, as the complaint itself has put her in the latter class, for it says she was employed by the defendant in its office on the fourth floor of the building, and that in order to reach her work as such employee she was compelled to take and use the elevator,

and that while going to her work as such employee she entered the elevator which was operated by another employee of the defendant. Hence, even if we should hold as a general rule that the operation and control of an elevator is or amounted to engaging in the business of common carrier of passengers, the initial pleading in the case has taken the decedent entirely out of that category and placed her in the class of employees.

The plain deduction from the testimony also is that the unfortunate girl was on her way to her work, for it shows that the distressing accident took place only ten minutes before the hour at which she was required to begin her labors. It is not shown that her compensation was increased or diminished by reason of her use of the elevator in going to her work. That contrivance was manifestly maintained for the convenience of those going to and from the place of business of the defendant, and it is so stated in substance in the complaint. On this distinction between passenger and employee as upon the main question of whether an elevator owner is a common carrier or not, the authorities are not agreed. In *Knahtla* v. *Oregon Short-Line etc. Ry. Co.,* 21 Or. 136, 148 (27 Pac. 91), it was held that a laborer going from one point to another on a train engaged in clearing a railway track of obstructions is not a passenger. In *Self* v. *Adel Lbr. Co.,* 5 Ga. App. 846 (64 S. E. 112), an employee riding on a log train in connection with his employment going to and from his work was not a passenger. To like effect is *St. Louis Iron Mt. & S. Ry. Co.* v. *Wiggam,* 98 Ark. 259, (135 S. W. 889). In *Eidem* v. *Chicago, R. I. & P. Ry. Co.,* 158 Ill. App. 82, it was ruled that, where transportation to and fro is part of the contract of employment, the employee is not a passenger. In *Manville* v. *Cleveland & T. R. R. Co.,* 11 Ohio St. 417, the plaintiff as manager of a gravel train was ordered to go to a certain place to get a train, and went on a passenger

train beyond his destination and passed the night. Returning by train the next morning he was injured by negligence of the engineer before reaching his destination and it was determined that he was an employee and not a passenger. Section-hands carried on a car from place to place for work are deemed to be employees and not passengers in *Indianapolis & Greenfield R. T. Co.* v. *Andis,* 33 Ind. App. 625 (72 N. E. 145) ; *South Ind. Co.* v. *Messick,* 35 Ind. App. 376 (74 N. E. 1097). In the case of *Ionnone* v. *New York, N. H. & H. R. Co.,* 21 R. I. 452 (44 Atl. 592, 79 Am. St. Rep. 812, 46 L. R. A. 730), it was concluded that a snow-shoveler being carried from one point to another in the progress of the work is not a passenger. In *Shannon* v. *Union R. Co.,* 27 R. I. 475 (63 Atl. 488), a switch-cleaner going on a train from one switch to another was not a passenger. In *Kilduff* v. *Boston Elevated Ry. Co.,* 195 Mass. 307 (81 N. E. 191, 9 L. R. A. (N. S.) 873), a track-layer being transported to and from his work was said not to be a passenger, and to the same effect is *Birmingham Ry., L. & P. Co.* v. *Sawyer,* 156 Ala. 199 (47 South. 67, 19 L. R. A. (N. S.) 717). In *Sanderson* v. *Panther Lbr. Co.,* 50 W. Va. 42 (40 S. E. 368, 88 Am. St. Rep. 841, 55 L. R. A. 908), the foreman of a logging camp going on a log train to the main office of the company to see about hay for his horses is still an employee and not a passenger. In *Walsh* v. *Cullen,* 235 Ill. 91 (85 N. E. 223, 18 L. R. A. (N. S.) 911), a waitress lived in a hotel where she was employed, and, returning one evening from a walk, after her working hours, was injured by the operation of the elevator which she took for the purpose of going to her room for the night. The court ruled that she was not a passenger but an employee. In *Watt* v. *Murphy,* 9 Cal. App. 564 (99 Pac. 1104), the janitor in a building in which there was an elevator used that appliance himself and was killed in the operation of it. It was

stated that he was a servant and not a passenger, and
that the master or owner of the building was bound
to use only ordinary care in providing a safe place for
him to work, although it be an elevator. In *McDonough* v. *Lanpher*, 55 Minn. 501 (57 N. W. 152, 43 Am.
St. Rep. 541), the employees of the defendant using
the whole of a five-story building were permitted to
ride in the freight elevator to and from their places
of work, although they were not required to do so, and
it was held that while so riding they were employees
and not passengers, and that the degree of care required of the defendant was that of the master for his
servant and not that imposed on a common carrier of
passengers. In *McDonald* v. *Simpson*, 114 App. Div.
859 (100 N. Y. Supp. 269), a saleswoman in a mercantile establishment was going up in an elevator to get
her street clothes at the end of her day's work and
was injured, but the principle was adhered to that she
was still an employee. In *Kappes* v. *Brown Shoe Co.*,
116 Mo. App. 154 (90 S. W. 1158), a large number of
employees of the defendant were waiting for an elevator to take them down and out of the building at the
end of a day's work. While thus waiting a boy was
crowded under the gate barring the entrance to the
elevator and fell down the shaft, and the rule was applied that he was still an employee of the company and
not occupying the relation of a passenger.

On the other hand, the case of *Haas* v. *St. Louis etc.
R. Co.*, 111 Mo. App. 706 (90 S. W. 1155), announced
that a laborer being transferred from one place to
another for the purpose of engaging in employment is
a passenger. In the *Louisville & N. R. Co.* v. *Scott*,
108 Ky. 392 (56 S. W. 674, 50 L. R. A. 381), it is held
that travel by an employee wholly disconnected from
his service made him a passenger. *Chattanooga R. T.
Co.* v. *Venable*, 105 Tenn. 460 (58 S. W. 861, 51 L. R. A.
886), states that gratuitous carriage to and from the

work is passenger service.    To the same effect is *Johnson* v. *Texas Central Road Co.,* 42 Tex. Civ. App. 604 (93 S. W. 433).    In *Enos* v. *Rhode Island Sub. Ry. Co.,* 28 R. I. 291 (67 Atl. 5, 12 L. R. A. (N. S.) 244), the plaintiff earned from the defendant $8 and 14 passenger tickets per week, and it was held that when he was traveling on those tickets he was a passenger.    In *Doyle* v. *Fitchburg Road Co.,* 162 Mass. 66 (37 N. E. 770, 44 Am. St. Rep. 335, 25 L. R. A. 157), an employee traveling entirely for his own purpose and disconnected with his employment was classed as a passenger.    In *McNulty* v. *Pennsylvania R. Co.,* 182 Pa. 479 (38 Atl. 524, 61 Am. St. Rep. 721, 38 L. R. A. 376), it was decided that, where the transportation was a part of the pay of the employee, his travel when not connected with actual service made him a passenger.    To the same effect is *Dickinson* v. *West End St. Ry. Co.,* 177 Mass. 365 (59 N. E. 60, 83 Am. St. Rep. 284, 52 L. R. A. 326).    A like doctrine is taught in *Simmons* v. *Oregon Ry. Co.,* 41 Or. 151 (69 Pac. 440, 1022), where the plaintiff, although generally in the employment of the defendant, was at the time of the injury traveling on his own private business.    In *Williams* v. *Oregon Short Line Co.,* 18 Utah, 210 (54 Pac. 991, 72 Am. St. Rep. 777), the plaintiff was traveling on a pass to a place where he expected to obtain employment from the defendant, but the service was not to begin until he arrived at his destination.    On this account he was held not to be an employee but a passenger.    In *Harris* v. *Puget Sound Elec. Ry. Co.,* 52 Wash. 289 (100 Pac. 838), the pass was issued as a part of the compensation to the employee.    That made him a passenger on a train with the operation of which he had nothing to do, although he was going to a distant place to work and his wages were going on at the time of the injury.

2, 3. Many other cases might be cited on this question, and it is impossible to reconcile them all to a cer-

tain standard; but upon mature consideration we deduce this result: If, as part of the compensation to the employee, the carrier agrees to transport the former to and fro between certain points when not engaged in actual service or when the travel is not closely connected with the employment, the employee must be considered a passenger because the carrier is for hire or is in a sense paid for by the work which the employee performs. On the other hand, if the carriage is merely for the mutual convenience of the parties, or either of them, in connection with the business in which the master is engaged, the relation of passenger and carrier does not exist between them, although as to the general public the employer is a carrier of passengers. In such cases as the latter the master is only bound to use ordinary care and prudence in supplying carriage for the employee, commensurate, indeed, with the danger to be reasonably apprehended, but not the highest degree of care due from a common carrier to passengers as such. A greater degree of absolute care is due from the master to the servant in a powder factory than in a milliner-shop; but in each instance the employer is only required to exercise ordinary care to provide a reasonably safe place in which to work and reasonably safe appliances for the convenience of the employees in connection with the enterprise, all in proportion to the inherent danger of the employment.

In the case in hand the elevator was immediately connected with the place of employment as a convenience both to employer and employee. It was a part of the duty of the latter to attend at the place to begin work at a stated hour, and, aside from the pleading on that subject, the decedent was so manifestly going to her work and her presence in the elevator was so immediately connected with her employment that she must be held to be an employee rather than a passenger.

In her capacity as employee the measure of care due from master to servant is not different in this case from any other founded on the same relation, and the court was in error in instructing the jury on the basis of passenger and carrier as between the defendant and the unfortunate girl.

4. It appears by the complaint that the elevator in question was used and operated by the defendant in connection with its business, and that the elevator operator and the decedent were both employees of the defendant. In *Brunell* v. *Southern Pacific Co.,* 34 Or. 256, 265 (56 Pac. 129, 131), this court, speaking through Mr. Justice MOORE, quotes with approval the definition of "fellow-servant" given by Judge THOMPSON in his work on Negligence (volume 2, page 1203), as follows: "That all who serve the same master, work under the same control, derive authority and compensation from the same common source, and are engaged in the same general business, though it may be in different grades or departments of it, are fellow-servants who take the risk of each other's negligence." Again, in *Mast* v. *Kern,* 34 Or. 247, 250 (54 Pac. 950, 951, 75 Am. St. Rep. 580), the court, speaking by Mr. Justice BEAN, said: "The rule and the one now unquestionably established, and supported by the great weight of authority, both in this country and in England, is that the liability of the master depends upon the character of the act in performance of which the injury arises, and not the grade or rank of the negligent employee. If the act is one pertaining to the duty the master owes to his servant, he is responsible for the manner of its performance, without regard to the rank of the servant or employee to whom it is intrusted; but, if it is one pertaining only to the duty of an operative, the employee performing it is a fellow-servant with his colaborers, whatever his rank, for whose negligence the master is not liable." It is

further said in the same opinion: ''It is the personal
and absolute duty of the master to exercise reasonable
care and caution to provide his servants with a reason-
ably safe place to work, reasonably safe tools, appli-
ances and instruments to work with, reasonably safe
material to work upon, suitable and competent fellow-
servants to work with them, and to make rules and
regulations needful for the safe conduct of the work;
and he cannot delegate this duty to a servant of any
grade so as to exempt himself from liability to a ser-
vant who has been injured by its nonperformance.
Whoever he intrusts with its performance, whatever
his grade or rank, stands in place of the master, and
he is liable for the negligence of such employee to the
same extent as if he had himself performed the act or
been guilty of the negligence. But when the master
has performed his duty in this regard and provided
competent employees, a reasonably safe place to work,
suitable material, tools and appliances to work with,
and needful rules and regulations, and the like, he has
discharged his whole duty in the premises and is not
liable to his servant for the negligence of another ser-
vant while engaged as an operative.

The complaint itself discloses all the elements in
the definition of ''fellow-servant'' as given by Judge
THOMPSON and approved by this court. The plain-
tiff does not pretend to say that the elevator was not
a fit appliance and in good order for the purpose for
which it was intended. The essence of the complaint
is centered in the allegation of the negligence and care-
lessness of the man who operated the elevator. The
testimony for the plaintiff shows that the elevator was
found to be in good order immediately after the acci-
dent, except that a fuse was blown out, and this was
explained by those witnesses speaking for the plaintiff
as being caused by the contact of the body of the de-
cedent between the elevator and the floor of the build-

ing.   It thus appears, or at least is not challenged by
the complaint, that the defendant furnished a reason-
ably safe elevator for the convenience of its business
and the use of its employees, and that the fault, if
any, causing the tragedy, was the negligence of the
operative.   Under the doctrine of *Mast* v. *Kern,* 34
Or. 247, 250 (54 Pac. 950, 951, 75 Am. St. Rep. 580),
the defendant had thus discharged its whole duty to
the decedent employee.   On the face of the complaint,
as well as upon the testimony, the deceased and the
operator of the elevator were fellow-servants, and the
court was wrong in its instructions to the jury that
they were not occupying that relation.   The complaint
was amenable to a general demurrer on the ground
that it appears from that pleading that the injury to
the deceased was on account of the negligence of her
coworker.   It is argued that, because the deceased had
nothing to do with the operation of the elevator, she
was not a fellow-servant with the elevator-man, al-
though they were in the employment of the same prin-
cipal and drew their pay from the same source.   The
same might be said of a brakeman and a fireman on
the same railroad train, or the man at the wheel, the
fireman, and the engineer of a steamboat.   In either
of these cases neither person has anything to do with
the duties of the other, yet it has often been held, and
is a rule of common sense, that they are fellow-ser-
vants.   The fellow-servant doctrine has been estab-
lished by so many precedents in this state through a
long series of years that it is now impolitic to disturb
it except by legislation.

5. Another question, not necessary to the decision of
this case under the circumstances already noted, but
which ought to be settled as a matter of general prac-
tice, is based on the contention of the defendant that
the plaintiff's counsel in examining the jurors on the

*voir dire,* by the form of the questions, purposely inti-
mated to the jury that the defendant was protected
against liability for accident by insurance in the Em-
ployers' Liability Assurance Corporation of London,
England, and that persistence in this course of exam-
ination extended so far as to amount to reversible error
on the ground of misconduct of counsel. The matter
is made the subject of 21 different assignments of error
in the bill of exceptions. This line of interrogation
seems to have been made a feature in the examination
of every juror, in various forms, from asking whether
the juror was acquainted with the corporation to
whether he was a stockholder in it.

In the first place, it is quite as admissible to insure
against loss by accident as against damage by fire. By
as much as it is legitimate to provide protection by
insurance against all manner of conflagrations whether
started by the incendiary or the flash of lightning, by
so much is it competent to arrange beforehand for
defense against litigation whether initiated by the
legitimate lawyer or the perniciously active ambulance
chaser. A defendant is not to be mulcted because he
is prudent enough to provide in advance by insurance
against adverse contingencies in business. The mere
fact, therefore, that in cases of this kind the defendant
is insured against loss by accident and defended by
counsel chosen or employed by the indemnifying com-
pany, cannot lawfully affect the decision of the issues
in any manner whatever. Under such circumstances
the insured has the same right to call upon the insurer
to defend, as the grantee of real property under cove-
nant of warranty has to demand that his grantor
defend in litigation attacking the title to the realty
described in the conveyance. Speaking by Mr. Justice
McBRIDE, in *Tuohy* v. *Columbia Steel Co.,* 61 Or. 527,
531 (122 Pac. 36, 37), this court has already said that:
"It has been frequently held that a willful attempt by

a plaintiff in a personal injury case to show that the defendant was protected by insurance constitutes reversible error. The ground for his holding is that a knowledge that the defendant has such protection might have a tendency to render the jurors careless as to the amount of the verdict.'' On the other hand, ''interest on the part of a juror in the event of the action or the principal question involved therein'' in good common sense as well as by our statute is a ground of challenge for implied bias: Section 122, subd. 4, L. O. L. This provision would certainly be available against a juror who was in fact a stockholder or interested in an insurance company warranting against loss by the injury forming the basis of pending litigation. Many authorities hold flatly that it is reversible error to bring before the jury in any form, even by examination on the *voir dire,* the fact that the defendant is insured against any adverse result of the action on trial: *Cosselmon* v. *Dunfee,* 172 N. Y. 507 (65 N. E. 494); *Brewing Co.* v. *Voith* (Tex. Civ. App.), 84 S. W. 1100; *Iverson* v. *McDonnell,* 36 Wash. 73 (78 Pac. 202); *Lowsit* v. *Seattle Lbr. Co.,* 38 Wash. 290 (80 Pac. 431); *Eckhart & Swan Milling Co.* v. *Schaefer,* 101 Ill. App. 500; *Lassig* v. *Barsky* (Sup.), 87 N. Y. Supp. 425; *Hoyt* v. *J. E. Davis Mfg. Co.,* 112 App. Div. 755 (98 N. Y. Supp. 1031); *Stratton* v. *Nichols Lbr. Co.,* 39 Wash. 323 (81 Pac. 831, 109 Am. St. Rep. 881); *Harry Bros. Co.* v. *Brady* (Tex. Civ. App.), 86 S. W. 615; *Lipschutz* v. *Ross* (Sup.), 84 N. Y. Supp. 632.

On the other extreme some precedents allow them to question the jurors not only about their possible interest in a given insurance company, but also as a basis therefor to show that the defendant is insured in that particular concern: *Dow Wire Works* v. *Morgan* (Ky.), 96 S. W. 530; *M. O'Conner & Co.* v. *Gillaspy,* 170 Ind. 428 (83 N. E. 738); *Rinklin* v. *Acker,*

125 App. Div. 244 (109 N. Y. Supp. 125); *Goff* v. *Kokomo Brass Wks.*, 43 Ind. App. 642 (88 N. E. 312); *Aetitis* v. *Spring Valley Coal Co.,* 150 Ill. App. 479; *Vindicator etc. Co.* v. *Firstbrook,* 36 Colo. 498 (86 Pac. 313, 10 Ann. Cas. 1108); *Swift & Co.* v. *Platte,* 68 Kan. 1 (72 Pac. 271, 74 Pac. 635); *Saller* v. *Friedman Bros. Shoe Co.,* 130 Mo. App. 712 (109 S. W. 794); *Iroquois Furnace Co.* v. *McCrea,* 191 Ill. 340 (61 N. E. 79); *Hoyt* v. *Independent Asphalt Pav. Co.,* 52 Wash. 672 (101 Pac. 367); *Heydman* v. *Red Wing Brick Co.,* 112 Minn. 158 (127 N. W. 561); *Foley* v. *Cudahy Packing Co.,* 119 Iowa, 246 (93 N. W. 284); *Girard* v. *Grosvenordale Co.,* 82 Conn. 271 (73 Atl. 747); *Spoonick* v. *Backus-Brooks Co.,* 89 Minn. 354 (94 N. W. 1079).

Between the two extremes are many varieties of opinion shading into each other like the colors of the spectrum, so that it is impossible to deduce from them any fixed rule by which all disputes may be mathematically settled. Among many sensible statements on this vexed question, the following is here quoted: "Parties have the legal right to ascertain whether or not jurors have a pecuniary interest in the litigation, and the exercise of this right necessarily authorizes them to elicit information from them on this subject. This, however, in no way gives counsel a license to communicate improper matters to the jurors or to the court within their hearing in connection with such inquiry. Such an examination should be held strictly within the limits of such right and by direct question on the subject unaccompanied by suggestion or comment from counsel which may convey improper and prejudicial information to jurors. * * The line of demarcation between prejudicial and nonprejudicial remarks of this character cannot be readily drawn. Each case depends largely upon the circumstances by which they are elicited and the probable effect upon the

jurors'': *Faber* v. *C. Reiss Coal Co.,* 124 Wis. 554, 563
(102 N. W. 1049, 1052).

6. The examination of a juror is nothing more nor
less than the taking of testimony on the issues to be
raised as to his qualifications to sit in the cause on
trial.   It is said in Section 856, L. O. L., that ''the
court may exercise a reasonable control over the mode
of interrogation so as to make it as distinct, as little
annoying to the witness and as effective for the ex-
traction of the truth as may be.''   In our judgment
the only reasonable principle to be laid down is that
in taking testimony on such an issue as on any other
the scope of the examination is subject to the discre-
tion of the court.   The court should, as near as pos-
sible, steer a safe course between the Scylla of a
packed jury on the one hand and the Charybdis of pet-
tifoggery on the other.   The plaintiff has the right to
inquire about the interest, direct or indirect, of the
jurors that may affect their verdict; but he has no
right to abuse that privilege or make it a stratagem
by which he can prejudice the jury with irrelevant
matter.   Any defendant has a right to a fair trial of
the actual issues joined, unbiased by the popular preju-
dice against foreign insurance corporations needlessly
injected into a case, even by indirection, where such
concerns are not immediately involved.   The trial
court ought to control the interrogatories so as to ex-
clude the element in question as far as consistent with
the administration of exact justice in the case made.
If needful to prevent putting the insurance of the
defendant into the case unnecessarily, the court would
be authorized to take repressive measures, even to dis-
missing the jury and continuing the case for a trial
*de novo.*   It would have been easy and would have
served every legitimate purpose in the case to ask the
jurors if they had any interest directly or indirectly

in the result of the case or in the principal question involved. Considering the remoteness of probability that the average juror of Multnomah County would be a stockholder or interested in a corporation of London, England, it was an indiscretion of the court to allow that institution to be made such a prominent feature in the process of impaneling the jury.

The judgment of the Circuit Court is reversed and the cause remanded, with direction to enter a judgment of nonsuit.

REVERSED, WITH DIRECTIONS.


Rehearing allowed September 9, reargued October 6, decided December 2, 1913.

## ON REHEARING.

(136 Pac. 835.)

En Banc.   Opinion by MR. CHIEF JUSTICE McBRIDE.

7, 8. Upon this rehearing we carefully examined this case, and, while a majority of the court are still of opinion that it should be reversed, we think the opinion should be modified in two respects: (1) In holding that the relation of the defendant to the deceased was that of master and servant, and that the degree of care required of defendant was only that of ordinary and reasonable care exacted from such relation; and (2) in holding that the relation of fellow-servants engaged in the same common employment existed between deceased and the person operating the elevator. The testimony shows that the deceased was employed by defendant as a stenographer on the fourth floor of the building; that her duties began at 8:30 in the morning, and that the accident happened at 8:20. At the time of the accident her time was her own. She was not the servant of the defendant until it was time for

her to begin such service. This is not a case like
many of those cited in the opinion, where a laborer
going to his work is injured in the course of trans-
portation. In such cases the time so occupied is the
time of the employer, and is paid for by him. The
service is being rendered just as effectually by the em-
ployee when he is being transported from one section
of the road to another as when he is laying ties or grad-
ing. It is true that the complaint alleges that deceased
was compelled to use the elevator in order to reach the
room where she was employed, but this allegation is
denied, and the testimony discloses that there was a
stairway which she could have used instead of the ele-
vator. But holding plaintiff strictly to the pleading,
and assuming for the purpose of this case that it was
necessary for deceased to use the elevator in order to
reach the place where her work was to be performed,
does not, in my view of the case, make her a servant
of the defendant while so using it, or differentiate her
in any way from any other passenger thereon. Pri-
marily the elevator was built and operated for the use
and benefit of the defendant. If it enabled persons
having business with defendant, or its tenants, to reach
the various floors of the building with less exertion,
or more expeditiously, this was a profit to defendant
in the way of an increased number of tenants, custom-
ers or business. If it enabled employees to get from
one floor to another more expeditiously, this would
also be a matter of convenience and profit to defendant.
It was placed there just as a stairway would have been,
and for the same purpose, namely, for the use and
profit of the employer. We are of the opinion that,
under the circumstances here disclosed, the deceased
was as much a passenger as any other person using the
elevator, and that the degree of care due her was just
the same that defendant owed to any person not in its

employ, who might have seen fit to use it in order to transact business with the defendant.

This measure of care is fully defined by Mr. Justice MOORE in *Kelly* v. *Lewis Investment Co.,* 66 Or. 1 (133 Pac. 826), as follows: "By the great weight of authority, however, it has been determined that a landlord who for a consideration stipulates to maintain and operate, for the accommodation of his tenants and their visitors, a passenger elevator into which the public are impliedly invited to enter to be carried to desired floors is subject to the highest degree of skill and foresight consistent with the efficient use and operation of the means of conveyance, the same as is imposed by law upon public carriers, of passengers" (citing Hutchinson, Carriers (3 ed.), § 100; 1 Thompson, Neg., § 1078; *Sweeden* v. *Atkinson Imp. Co.,* 93 Ark. 397 (125 S. W. 439, 27 L. R. A. (N. S.) 124); *Treadwell* v. *Whittier,* 80 Cal. 574 (22 Pac. 266, 13 Am. St. Rep. 175, 5 L. R. A. 498); *Deposit Co.* v. *Sollitt,* 172 Ill. 222 (50 N. E. 178, 64 Am. St. Rep. 35); *Springer* v. *Ford,* 189 Ill. 430 (59 N. E. 953, 82 Am. St. Rep. 464, 52 L. R. A. 930); *Ohio Valley Trust Co.* v. *Wernke,* 42 Ind. App. 326 (84 N. E. 999); *Cubbage* v. *Estate of Youngerman,* 155 Iowa, 39 (134 N. W. 1074); *Kentucky Hotel Co.* v. *Camp,* 97 Ky. 424 (30 S. W. 1010); *Goodsell* v. *Taylor,* 41 Minn. 207 (42 N. W. 873, 16 Am. St. Rep. 700, 4 L. R. A. 673); *Lee* v. *Publishers Knapp & Co.,* 155 Mo. 610 (56 S. W. 458); *Becker* v. *Lincoln R. E. & Bldg. Co.,* 174 Mo. 246 (73 S. W. 581); *Luckel* v. *Century Bldg. Co.,* 177 Mo. 608 (76 S. W. 1035); *Quimby* v. *Bee Bldg. Co.,* 87 Neb. 193 (127 N. W. 118, 138 Am. St. Rep. 477).

9. If the deceased was a passenger and not a person then engaged in the service of the defendant, defendant is liable for the negligence of its operator, unless the deceased was a fellow-servant engaged in the same common employment with him, which brings us to the second error alleged in the petition for rehearing.

The definition of the term "fellow-servant" has gradually undergone a change in favor of the employee. In the early history of jurisprudence a suit for damages by a servant against his master, while it was tolerated, was always looked upon with disfavor by the courts as a sort of moral petit treason, and every limitation that judicial ingenuity could devise was interposed to make recovery difficult; but in the progress of years this strictness has greatly relaxed, and the doctrine of the assumption of risk and negligence of fellow-servant has been placed upon a decent and logical basis. The rule as to who are fellow-servants, when reduced to its lowest terms, may be stated as follows: "The master is not responsible for an injury inflicted upon his servant by the negligence of a fellow-servant engaged in the same common employment." This is the sum of all the modern authorities, and should not be lost sight of in the midst of all verbiage in which it is sometimes obscured. The definition means something, and every word and phrase means something. It is not enough that the parties should be fellow-servants. The governor of the state and the janitor of the statehouse are in a sense fellow-servants of the state; the chief attorney of the greatest railroad in the state is in a sense a fellow-servant with the conductors and brakemen of the same road. And right here is where many courts have gone wrong, by omitting or forgetting the concluding and important qualification of the rule, namely, that the fellow-servants *must be engaged in the same common employment.*

The reason of this rule is clearly and succinctly stated in 4 Thompson, Negligence, Section 4970, in the following language: "It is perhaps on the question, What is common employment? that we find the greatest divergencies of opinion. In a few jurisdictions the rule under consideration is restricted to cases where the servant injured and the servant inflicting

the injury are so closely associated that they can watch over each other's conduct, and, if necessary, report it to the common master.   The reason for the general rule is one of public policy.   Its object is to secure to the public a more faithful service from the employees of railway companies, navigation companies, and other companies conducting a business wherein the safety of the public is involved, by making it the interest of each one of the employees of such persons or corporations to look after and encourage carefulness and fidelity in all the rest.   This reason can have no application to employees whose situation allows them no corrective influence over each other; but where this doctrine obtains and the servants are so disassociated that the purpose of the rule is defeated, they are not deemed fellow-servants within the meaning of the rule under consideration, but the rule of *respondeat superior* applies. * * It has been reasoned that an application of the fellow-servant rule which would put one servant in the situation of accepting the risk of the negligence of another servant so remote from him that there is no opportunity of exercising that superintending care which the rule is intended to enforce would operate as a penalty, and would be sheer cruelty.''   This proposition is so clearly in accord with justice and reason that it does not require the citation of authorities to support it.   The authorities cited by the learned author above quoted abundantly support the text.   Now let us make a concrete application of the text to the case in hand.   The deceased was a girl, a stenographer, to whom, presumably, the machinery of an elevator was an unknown quantity. She had not and could not have that intimate knowledge of the working of an elevator, or acquaintance of the person in charge of it, that would or might lead her to suggest caution in the manner in which he should perform his duties, neither would she be likely to have

that acquaintance or skill in the operation of the machine necessary to enable her to judge as to whether or not it was carefully handled. She was engaged in mental and clerical work; the operator was engaged in a different and mechanical work, about which she knew nothing. Except for the fact that they were hired by the same corporation there was nothing in common between them, and to hold that deceased assumed the risk of the negligence of the person operating the elevator is to hold that all persons serving under the same employer are fellow-servants in a common employment, which is contrary to justice and enlightened precedent. A stenographer employed by the Southern Pacific Railroad Company in San Francisco is not a fellow-servant engaged in the same common employment with the janitor of the offices of the same company in Portland, and no legal fiction can make him so; and by the same token the deceased did not sustain that relation to the person operating the elevator. This being so, the deceased sustained the same relation to the operator of the machine that any other person having business with the defendant would have sustained, which is, in substance, the same relation that a passenger sustains to the conductor or engineer of a train.

The recent case of *Thompson* v. *Northern Hotel Co.,* 256 Ill. 77 (99 N. E. 878), is exactly in point on this question. There the injured person was a maid in charge of the ladies' toilet at the hotel, and her duties required her to make several daily trips in the elevator. It is evident that her use of it was quite as frequent as that of the deceased in the case at bar, if not more so. There, as in the case at bar, she was injured by the negligence of the operator of the elevator, and there, as here, the defendant urged that she and the operator were fellow-servants. The court disposed of this contention in the following language:

"Plaintiff in error next contends, under this assignment of error, that defendant in error and the operator of the elevator were fellow-servants. The definition of fellow-servants is a question of law: *Hartley* v. *Chicago & Alton R. R. Co.,* 197 Ill. 440 (64 N. E. 382). The particular relation of two servants of the same master in a given case is a question of fact; hence whether two servants of a common master are fellow-servants depends upon the facts of the particular relation and the application of the law defining fellow-servants to those facts, and in that sense the question is a mixed question of law and fact: *Lake Erie & Western R. R. Co.* v. *Middleton,* 142 Ill. 550 (32 N. E. 453). Under the rule established by numerous decisions of this court, to create the relation of fellow-servants the servants must be directly co-operating with each other in a particular work at the time of the injury, or their usual duties must be such as to bring them into habitual association, so as to afford them the power and opportunity of exercising a mutual influence upon each other promotive of proper. caution: *Bennett* v. *Chicago City Ry. Co.,* 243 Ill. 420 (90 N. E. 735). There is no basis whatever for the contention that defendant in error and the operator of the elevator were fellow-servants under the first branch of the rule. They were not co-operating with each other in any particular work. They were in different departments and under different superiors. The fact that one operated the elevator upon which the óther rode in the discharge of her duties did not bring them into co-operation with each other in the performance of the duties of either. Nor do we think that the fact that defendant in error frequently rode up and down on the elevator which Le Roy Williams was operating can be said to have brought them into such association with each other in the discharge of their duties that they might reasonably exercise an influence over each

other promotive of care. The duties of these two employees were so totally different that neither could be supposed to know whether the other was exercising proper care in the discharge of his duties. The maid of the toilet-room would not be supposed to be able to counsel and advise the operator of an elevator as to the safest mode of managing the machine, or to exercise any influence over him promotive of care, unless she had such knowledge of the proper manner of operating an elevator as to determine when it was properly run and when it was not. Where two servants are brought together in direct co-operation in the performance of a particular work, they have an opportunity, and, being engaged in the same line of work, they have the power and ability, to exercise an influence over each other promotive of proper caution, and where they are engaged in different lines of employment and their usual duties bring them into habitual association, the association must be sufficiently personal to furnish the same opportunity and power to exercise an influence upon each other promotive of proper caution: *Bennett* v. *Chicago City Ry. Co.,* 243 Ill. 420 (90 N. E. 735). We do not think that defendant in error and the operator of the elevator were, as a matter of law, fellow-servants.''

As to the other matter urged upon rehearing, the judgment should be reversed for the reasons stated in the original opinion.

The cause will be remanded, with directions to the court below to grant a new trial.

REVERSED : REMANDED FOR NEW TRIAL.

MR. JUSTICE BURNETT. delivered the following dissenting opinion.

It is contended that the former opinion was erroneous in holding: First, that the relation of the defendant to the deceased was that of employer and em-

ployee; and, second, that the deceased and the operator of the elevator in which she lost her life were fellow-servants.

Turning to the complaint, the foundation of plaintiff's action, we find in the words of that pleading that the "elevator was used by the general public and the employees of the defendant in going to and from said place of business, in passing from the first floor of said building to the fourth floor thereof, which fourth floor was occupied by said Pacific Monthly Company as aforesaid." This allegation fixes the elevator and its operation as an appliance or adjunct of the defendant's general business—a part of its plant. We next discover, quoting from the complaint: "That on the 2d day of September, 1910, Mabel Putnam was employed by the defendant in its office on the fourth floor of said building, and, in order to reach her work as such employee was compelled to take and use said elevator in going from the first floor of said building to the fourth floor thereof, and that on said day, while going to her work as such employee, she entered said elevator on the first floor of said building." These allegations fix the character and capacity of the decedent at the time the accident happened. She was either employed or she was not employed by the defendant when the fatal accident occurred. The complaint says she was employed, and this is not traversed. This court has no right to deny it, or to consider it amended on appeal, so as to change the decedent from an employee to a passenger *nolens volens*. Then, too, as a matter of fact, what caused her to use the elevator? Manifestly, under the allegations of the complaint and the testimony as well, it was the compulsion of her employment, an incident of her service. Had it not been that she was an employee of the defendant, occupying that relation and none other, she would not have been in the elevator. Her

going into the elevator on the defendant's premises was as much the act of an employee as entering the door of the office and taking her seat upon a chair provided for her use. All alike are conveniences and appliances helpful in the operation of the general business of the defendant. It is not meet that we should make a better case for those who would profit by the death of the unfortunate girl than they have made for themselves on the pleadings.

It is argued that because the accident happened 10 minutes before the usual time for beginning her active duties the decedent was not an employee. It is said that, until she actually began her daily round as stenographer, her time was her own, so that she was not until then in the service of the defendant. This statement is not entirely borne out by the bill of exceptions. That document says that the testimony tended to prove "that Mabel Putnam, on September 2, 1910, at the time of the accident resulting in her death, was a stenographer in the employ of the defendant and receiving a salary of $35 per month." She was employed by the month and not by the hour. Her status as employee or passenger is not determined by the stroke of the clock. It cannot be said reasonably that she was a passenger or employee according to whether she was early or late in arriving at the office where she worked.

A single authority, that of *Thompson* v. *Northern Hotel Co.*, 256 Ill. 77 (99 N. E. 878), is quoted to sustain the contention that her time was her own at the moment of the accident, making her a passenger and not an employee. In that case the plaintiff was an employee of a hotel company in one of the ladies' toilet-rooms. Her duties required her to make several daily trips in the elevator of the hotel. She was injured by the negligence of the elevator boy in starting the elevator before she had time to enter the same. With-

out a single precedent cited to sustain the opinion, with two justices dissenting, the court in that case finally adopted the "department" theory of fellow-servant, and held that the plaintiff was not a fellow-servant of the elevator boy, ignoring the much better reasoning of the case by the same court in *Walsh* v. *Cullen,* 235 Ill. 91 (85 N. E. 223, 18 L. R. A. (N. S.) 911). In the latter case the decedent was a waitress in a hotel, and after her work was done had gone for a walk. Returning to her room she took the elevator and was injured by the negligence of the operator. Upon mature deliberation, on a second appeal of the case, the Supreme Court of Illinois held that she was a fellow-servant with the operator of the elevator, and on that account could not recover, although the injury occurred after the regular hours of her daily labor. The court said: "Her going out of the hotel for a walk was not inconsistent with the relation of master and servant existing between her and the defendant, and was in accordance with the ordinary and usual custom of house servants when not actually engaged in their duties. If a servant by going from her room to the street and returning again to her room creates a new and independent relation, an employer who would permit a servant to ride with him when not actually engaged in work would be transformed into a carrier of passengers, and a farmer who would carry his farm-hand to town after the work of the day was done would be engaged in the same business as a railroad company. The plaintiff was returning to her room for the purpose of resuming her work in the morning, and there was no evidence under which she could be held to be a passenger by being in the elevator. We cannot approve the view of the trial court as to the law that if an employer permits a servant to go from her room to the street and back, a new relation arises with new obligations and duties, and the servant

becomes freed from assumption of risk and all other obligations of a servant.'' The opinion is well reasoned and well sustained by the authorities quoted. The Circuit Court erred when it imposed upon the defendant that high degree of care, amounting well-nigh to insurance, required of a common carrier for its passengers, but not due to its employees.

Turning again to the complaint, we learn that the elevator ''was, at the time, being operated by the regular elevator operator in the employ of the defendant.'' We discover, also, by its language, that ''while in the act of passing out of said elevator as aforesaid, the said elevator operator so unskillfully, negligently, and carelessly manipulated, handled and operated said elevator that the same, suddenly and without warning to the said Mabel Putnam, began to descend very rapidly, and continued so to descend until it reached a point between the third and second floors of said building, and the said Mabel Putnam was thereby caught between said elevator and the floor of the third and the ceiling of the second floor, and greatly wounded, crushed and mangled, from the effects of which she immediately died; that the death of the said Mabel Putnam was caused by the descent of said elevator, as aforesaid, and by reason of the careless, negligent and unskillful manner in which the same was run, operated and manipulated by said elevator operator, and without any fault or negligence of the said Mabel Putnam.''

It is not charged that the elevator was in any way out of repair or unfit for the purpose for which it was designed; neither is it intimated in the complaint or elsewhere that the defendant was negligent in the selection and employment of the operator. The sole cause of complaint is the individual negligence of the operator himself. Construing the pleadings more strongly

68 Or.—5

against the pleader, and presuming, as we must, that the defendant performed its duty in providing a safe elevator and in selecting a competent operator, the rule announced in *Johnson* v. *Portland Stone Co.*, 40 Or. 436, 440 (67 Pac. 1013, 68 Pac. 425), applies to this case.   There it is thus stated: "But when the master has provided for the servant a reasonably safe place in which to work, he is not responsible because it is afterward made dangerous by the carelessness or negligence of a coservant or employee, while in the discharge of duties pertaining to a mere operative, even though he be the superintendent or foreman in charge of the work." .

Following *Mast* v. *Kern*, 34 Or. 247 (54 Pac. 950, 75 Am. St. Rep. 580), *Miller* v. *Southern Pac. Co.*, 20 Or. 285 (26 Pac. 70), and other precedents well established in this state, the decedent and the operator were clearly fellow-servants, being employed, under the control of, and paid by the same person, and engaged in the work of their principal.   True enough, as stated in the illustration made by Mr. Chief Justice McBRIDE, a stenographer employed by the Southern Pacific Company in San Francisco is not a fellow-servant engaged in the same common employment with the janitor of the office of the same company in Portland; but that is not this case.   There the two employees have no opportunity to observe each other or to report or avoid each other's delinquencies.   Neither their goings and comings, nor the discharge of their duties, bring them into contact with each other, and the possibility of either of them affecting the other in any way is so. very remote that neither can be supposed to have contracted for employment with reference to it.   It is a far cry from a great railway corporation whose operations span a continent to a little publishing house in an upper story whose employees are thrown together several times a day by the conditions of their service.   Here, the decedent

was employed in the same building, in the same enterprise, under a common employer, and came in daily contact with the operator in going to and from her work. Entering the building, using the elevator, and going thence into her office were incidents inseparable from her employment. She had almost constant opportunity to observe whether or not the operator was careless in the management of the elevator. It is not necessary to place her in the category of fellow-servant that she did not know the intricacies of the elevator's machinery. The condition of the machinery is not involved in the pleadings, and the testimony shows that it was in perfect order except a blown-out fuse, caused by the contact of the body of the deceased. It would require only common observation to determine whether the operator was in the habit of running the elevator too rapidly, or being unable to stop it at the proper place, or of starting it either up or down without giving a reasonable opportunity to persons to leave the elevator or enter it. Any intelligent woman using the elevator at all would know that she was liable to be injured by the negligence of the operator, and must be presumed to have contracted with reference to and assumed the risk involved.

As to what is common employment so as to make out the relation of fellow-servant, the following precedents are cited in addition to those mentioned in the original opinion (130 Pac. 986). The rule is thus stated in Shearman & Redfield on Negligence (6 ed.), § 236. "Under the generally prevailing rule fellow-servants are engaged in a common employment when each of them is occupied in service of such a kind that all the others, in the exercise of ordinary sagacity, ought to be able to foresee, when accepting their employment, that his negligence would probably expose them to the risk of injury." This is quoted with approval in *Kniceley* v. *West Virginia M. R. Co.,* 64

W. Va. 278 (61 S. E. 811, 17 L. R. A. (N. S.) 370), a
case where the plaintiff was injured while unloading
lumber from a car, on account of the switching crew
of the defendant running a train of cars against the
one upon which the plaintiff was at work.

In *Brush Electric L. & P. Co.* v. *Wells,* 110 Ga. 192
(35 S. E. 365), a lineman in the employ of the defend-
ant, in the performance of his duty, climbed one of the
poles to repair or change the wires strung there.
While he was thus engaged, an engineer in a distant
power-house turned on the current, causing the death
of the lineman. It was held that they were fellow-
servants, although they were employed in different de-
partments, and so far removed from each other that
neither could in any degree control or influence the
conduct of the other.

In *Zilver* v. *Robert Graves Co.,* 106 App. Div. 582
(94 N. Y. Supp. 714), the plaintiff was a clerk in the
office of the defendant, employed in stamping and
directing mail. According to the complaint there, he
left the office at night, having extinguished the lights,
as he had been directed by another employee, and
approached the elevator, the door of which had been
negligently left open by the operator. The plaintiff
fell down the shaft and received the injuries com-
plained of, but the court held that the negligence of
the operator was the negligence of a fellow-servant,
entailing no liability upon the defendant.

In *Fouquet* v. *Railroad Co.,* 53 Misc. Rep. 121
(103 N. Y. Supp. 1105), the plaintiff was an employee
in the architectural office of the defendant in the build-
ing occupied by the latter for depot and office purposes
The elevator operator was employed by the superin
tendent of the building. The plaintiff was injured by
the management of the elevator due to the negligence
of the operator. The court held that the plaintiff and
operator were fellow-servants, and this case was

affirmed on appeal (S. C., 123 App. Div. 804, 108 N. Y. Supp. 525). The court said: "An elevator is now considered an essential in an office building, indeed, in any high structure; and defendant, in providing elevator service, was but facilitating and expediting its business in making the various offices in the building easy of access to those of the general public having business in any of its offices, as well as to the employees therein employed, all of which having more or less directly to do with its general purpose, its railroad. * * It is true that the operation of the elevator here in question had in itself no bearing on or relation to the operation of trains or the work of the surveying and architectural offices of the defendant; but it had to do with making easy of access the various offices of the defendant by those having business relations with that 'complex organism,' the defendant's railroad, and plaintiff has made no claim that the operator of the elevator was incompetent for the performance of his employment. That the employees of a common master are working at different trades, at various kinds of work, in different branches and departments, and whether in skilled or unskilled labor, does not change the rule as to the master's nonliability to an employee for the negligence of coservants, if the master be himself free from concurring negligence" (citing numerous authorities). The court further says: "Here the elevator-man, in operating the elevator at the time of the injury to plaintiff, was performing the detail of the work of an employee, and was not the *alter ego* of the common master. He was not doing the master's duty, and my conclusion is that he and the plaintiff were fellow-servants, and that the defendant is not liable to the plaintiff for the negligence of the operator. There is nothing in the contention that plaintiff, not having reached the particular office and room in which he put in his service or time, was not in the employment of

the defendant. The place of his employment was the building, the Grand Central Station, and he was in the employ of the master from the time he reached the place of employment. He was employed and paid by the month, and at the time on his way to his particu-lar room or office."

To like effect is the case of *Spees* v. *Boggs,* 198 Pa. 112 (47 Atl. 875, 82 Am. St. Rep. 792, 52 L. R. A. 933). There the operator of the elevator in a dry-goods establishment was held to be a fellow-servant to a tailoress in another department of the same business, who habitually used the elevator in going to and from her place of work.

Another elevator case is *Miller* v. *Centralia P. & W. P. Co.,* 134 Wis. 316 (113 N. W. 954, 13 L. R. A. (N. S.) 742), where the plaintiff fell down an elevator shaft which was not sufficiently lighted at that moment, owing to the fact that an electrician in charge of the electric lights, working in another department of the business, had turned them off. They were held to be fellow-servants, exonerating the defendant from liability in the absence of any allegation showing that it had not used ordinary diligence in providing a safe place in which to work, safe appliances, and the like.

In *McAndrews* v. *Burns,* 39 N. J. Law, 117, 119, the rule is thus stated: "Common employment is service of such kind that, in the exercise of ordinary sagacity, all who engage in it may be able to foresee, when accepting it, that through the negligence of fellow-servants it may probably expose them to injury. The ground on which rests the exemption of the master from liability to the servant for negligence of a fellow-servant, engaged in a common employment, is that the servant is presumed to contract in reference to the risk incurred."

Again, in *Donnelly* v. *Cudahy Packing Co.,* 68 Kan. 653 (75 Pac. 1017), the rule is thus stated: "Whenever

coemployees, under the control of one master, are engaged in the discharge of duties directed to one common end, such duties being so closely related that each employee must know he is exposed to the risk of being injured by the negligence of another, they are fellow-servants, and each assumes the risk to which he.is thus exposed.''

To the same effect is *Jock* v. *Columbia etc. R. Co.,* 53 Wash. 437 (102 Pac. 405), where the relation of fellow-servant was deduced by Mr. Justice DUNBAR from the fact that the plaintiff had the opportunity to observe the manner in which the other employee of the defendant performed his duties.

*Wilson* v. *Hudson River W. P. & P. Co.,* 71 Hun, 292 (24 N. Y. Supp. 1072), is a case where a laborer for a paper manufacturing company was killed by machinery set in motion by a chemist in the employ of the company. The court held them to be fellow-servants, and so exempted the employer from liability for the injury.

In *Pawling* v. *Hoskins,* 132 Pa. 617 (19 Atl. 301, 19 Am. St. Rep. 617), it was held that the engineer in charge of an engine which furnished the power for a stationery manufactory is a fellow-servant of the foreman of the composing-room of the same, and the latter cannot recover damages for an injury occasioned by the negligence of the engineer.

In *Kitchen Bros. Hotel Co.* v. *Dixon,* 71 Neb. 293 (98 N. W. 816), it was held that a bell boy in a hotel, a part of whose duties consists in showing guests to their rooms, using the elevator for that purpose, and the elevator boy in charge of the elevator, both being employed and subject to the directions of the same master, are fellow-servants.

In *Wolcott* v. *Studebaker* (C. C.), 34 Fed. 12, the plaintiff was on his way to his work in an upper story of the defendant's building, using the elevator installed in the building for that purpose. He was injured by

the negligence of the engineer, furnishing the motive power for the elevator, and that of the elevator boy. It was held that they were fellow-servants; and this doctrine is borne out by a note appended to the end of the case.

In the case of *Stringham* v. *Stewart*, 27 Hun, 562 (100 N. Y. 517, 3 N. E. 575, 111 N. Y. 188, 18 N. E. 870, 1 L. R. A. 483), an engineer running an elevator in a farm warehouse was held to be a fellow-servant with the laborer injured by the negligent operation of that contrivance by the engineer.

In *Mann* v. *O'Sullivan*, 126 Cal. 61 (58 Pac. 375, 77 Am. St. Rep. 149), the elevator-man and a carpenter engaged in inclosing the elevator shaft, who was injured by the negligence of the operator, were held to be fellow-servants. Among other things, the court there says, after stating the rule given by Shearman & Redfield, Negligence (6 ed.), Section 236, as being as favorable to the servant as can be found in any standard work: "Testing this case by the foregoing rule, the conclusion is irresistible that plaintiff, who was employed to repair the elevator shaft, and Carney, the man who was employed to operate the elevator, were servants of defendant, engaged in a common employment, or, as our statute has it, engaged 'in the same general business.' "

In *Schwind* v. *Floriston*, 5 Cal. App. 197 (89 Pac. 1066), the plaintiff's intestate was employed in a clerical department of a paper-mill. The company defendant had a switch from the main line of a railroad running to its mill, and owned cars which it operated on that switch in the prosecution of its business. Owing to mismanagement of the cars by the man in charge of them, the decedent met his death while going on an errand for the defendant, and the court held that he was a fellow-servant with the man in charge of the

cars, and exonerated the defendant from liability on that account.

In *Railey* v. *Garbutt,* 112 Ga. 288 (37 S. E. 360), the plaintiff was injured by mismanagement of a logging train on which he was riding to his work. It was held that he was the fellow-servant of the engineer, and could not recover from the defendant.

In *Georgia Coal etc. Co.* v. *Bradford,* 131 Ga. 289 (62 S. E. 193, 127 Am. St. Rep. 228), the plaintiff was a teamster engaged to assist in hauling a boiler from the defendant's furnace to its coal mines some miles distant. He was injured by the negligence of the train crew in charge of some cars belonging to the defendant in the yard where he was about to engage in hauling the boiler. It was held that the plaintiff was a fellow-servant with the train crew, and could not recover.

In *Adams* v. *Iron Cliffs Co.,* 78 Mich. 271 (44 N. W. 270, 18 Am. St. Rep. 441), the plaintiff was an inside founder in a blast furnace belonging to the defendant. The court there held that the plaintiff was not out of the employ of the defendant so long as he remained on its premises, and that he was a fellow-servant with the engineer running cars to and from the furnace of the defendant, thus assuming the risk of the engineer's negligence by which he was injured.

In *Roland* v. *Tift,* 131 Ga. 683 (63 S. E. 133, 20 L. R. A. (N. S.) 354), the woodcutter in the employ of a sawmill owner who operated a logging railroad was hurt by the negligence of the train crew while being carried to his work. *Held,* that he was a fellow-servant with the crew, and could not recover from the defendant.

In *Baltimore & Ohio R. R. Co.* v. *Baugh,* 149 U. S. 368, 384 (37 L. Ed. 772, 13 Sup. Ct. Rep. 914, 920), the court, speaking by Mr. Justice BREWER, says: *"Prima facie,* all who enter into the employ of a single master are engaged in a common service, and are fellow-ser-

vants, and some other line of demarcation than that of control must exist to destroy the relation of fellow-servants. All enter into the service of the same master, to further his interests in the one enterprise; each knows when entering into that service that there is some risk of injury through the negligence of other employees, and that risk, which he knows exists, he assumes in entering into the employment. * * 'Having been engaged for the performance of specified services, he takes upon himself, the ordinary risks incident thereto. As a consequence, if he suffers by exposure to them, he cannot recover compensation from his employer. The obvious reason for this exemption is that he has, or, in law is supposed to have, them in contemplation when he engages in the service, and that his compensation is arranged accordingly. He cannot, in reason, complain if he suffers from a risk which he has voluntarily assumed, and for the assumption of which he is paid.' But the danger from the negligence of one specially in charge of the particular work is as obvious and as great as from that of those who are simply coworkers with him in it. Each is, equally with the other, an ordinary risk of the employment.''

In *Beutler* v. *Grand Trunk etc. Co.*, 224 U. S. 85 (56 L. Ed. 679, 32 Sup. Ct. Rep. 402), the plaintiff was an employee of a railroad company engaged in work in the repair yard. A switching crew ran a car needing repair from the general tracks into the repair yard, and by their negligence killed the decedent. The court, speaking by Mr. Justice HOLMES, said: ''No testimony can shake the obvious fact that the character of their respective occupations brought the people engaged in them into necessary and frequent contact, although they may have had no personal relations. Every time that a car was to be repaired it had to be switched into the repair yard. There is no room for the exception to the rule that exists where the negligence consists

in the undisclosed failure to furnish a safe place to work in, an exception that perhaps has been pushed to an extreme in the effort to limit the rule.''

In *McCarty* v. *Rood Hotel Co.,* 144 Mo. 397 (46 S. W. 172), an engineer in the employ of a hotel company was injured by the carelessness of the elevator boy in moving the elevator while the plaintiff was repairing the annunciator wires, and it was held that they were fellow-servants, exempting the defendant from liability.

Again, in *Northern Pacific R. R. Co.* v. *Hambly,* 154 U. S. 349 (38 L. Ed. 1009, 14 Sup. Ct. Rep. 983), a laborer repairing a track was held to be a fellow-servant with the engineer and conductor of a passenger train by which the plaintiff was injured. The court there said: ''As a laborer upon a railroad track, either in switching trains or repairing the track, is constantly exposed to the danger of passing trains, and bound to look out for them, any negligence in the management of such trains is a risk which may or should be contemplated by him in entering upon the service of the company. This is probably the most satisfactory test of liability. If the departments of the two servants are so far separated from each other that the possibility of coming in contact, and hence of incurring danger from the negligent performance of the duties of such other department, could not be said to be within the contemplation of the person injured, the doctrine of fellow-servant should not apply.''

In *Norfolk & Western R. R. Co.* v. *Nuckols,* 91 Va. 193 (21 S. E. 342), it is laid down that ''a person entering the service of another assumes all risks naturally incident to that employment, including the danger of injury by the fault or negligence of a fellow-servant.'' It is said there that ''the liability does not depend upon the fact that the servant injured may be in a different department of the service from the wrongdoer.''

The exception to the general rule is made to depend upon the test of whether the departments are so far separated from each other as to exclude the probability of contact and of danger from the negligent performance of their duties by employees of the different departments. If they are so separated, then the servant is not to be deemed to have contracted with reference to the negligent performance of the duties of his fellow-servant in such other department: *Seccombe* v. *Detroit Elec. Ry.*, 133 Mich. 177 (94 N. W. 747); *Kenefick-Hammond Co.* v. *Rohr*, 77 Ark. 290 (91 S. W. 179); *Bier* v. *Jefferson, M. & I. R. R. Co.*, 132 Ind. 78 (31 N. E. 471); *Railroad Co.* v. *Triplett*, 54 Ark. 289 (15 S. W. 831, 16 S. W. 266, 11 L. R. A. 773); *Quincy Min. Co.* v. *Kitts*, 42 Mich. 34 (3 N. W. 240); *Valtez* v. *Ohio & Mississippi Ry. Co.*, 85 Ill. 500; *Chicago & Alton R. R. Co.* v. *Murphy*, 53 Ill. 336 (5 Am. Rep. 48); *Enright* v. *Oliver*, 69 N. J. Law, 357 (55 Atl. 277, 101 Am. St. Rep. 710); *Erjauschek* v. *Kramer*, 141 App. Div. 545 (126 N. Y. Supp. 289); *Jackson* v. *Norfolk & W. R. Co.*, 43 W. Va. 380 (27 S. E. 278, 31 S. E. 258, 46 L. R. A. 337).

In Labatt's Master and Servant (2 ed.), Sections 1420–1422, we find the learned author, after an exhaustive examination of precedents, summing up on this question in this manner: "We are manifestly conducted to the conclusion that in determining whether or not there was a common employment, as between two servants, the necessary and the only proper question to ask is whether or not their duties were so related that each of them must have known himself to be exposed to the risk of being injured in the event of the others committing a negligent act, and that this risk was so normal and so likely to eventuate in actual disaster that it was presumably considered by each of them in fixing the amount of the compensation which they were willing to receive for their services. It is

important to note that, for the purposes of this rule, the nonanticipation of the servant is material only, in so far as it may be resolved into an excusable incapacity to forecast the probability of injury from the particular servant who was guilty of the negligent act in question. The mere fact that the negligent act itself was one which could not have been reasonably foreseen does not take the case out of the operation of the general rule. The principle laid down in the preceding section is accepted as the test of common employment by a large majority of the courts. One of its corollaries is that the plaintiff is precluded from recovery wherever the functions which he and the negligent coemployee were discharging, although not identical or even similar in character were yet such that the two servants were 'contributing directly to the common object of their common employer' in that enterprise for which their services were engaged. Or, to employ a terminology which is frequently found in the books, the injured servant's right to recover does not depend upon the fact that he may have been in a different department of the service from the delinquent. * * In numerous instances a servant's contemplation and inferential acceptance of the risk of his fellow-servant's negligence are suggested by the fact that their duties, although diverse in kind, were obviously such that they might at any time be brought into close proximity to each other; and the authorities show that this circumstance is almost decisive against the plaintiff. But the essence of his disability to recover being his imputed comprehension of the likelihood of injury, it is evident that the remoteness of the place where the negligent servant habitually works is not necessarily a circumstance which negatives an assumption of the risk of his negligence.''

Worked out to its logical conclusion, the theory that the plaintiff can recover because her duties as stenog-

rapher had no immediate connection with the duties of the elevator-man would lead us to hold that she could not be injured by anyone in the defendant's service except a fellow-stenographer without making the defendant liable. It would be only a step further to hold that if that fellow-stenographer for the moment assumed the duties of janitor for the purpose of putting wood into the heating stove, and in so doing negligently dropped a stick upon the plaintiff's intestate and so injured her, a recovery could be had against the employer for the resulting damage. To charge the defendant with liability under the circumstances of this case is to establish the department theory contrary to the doctrine laid down in *Mast* v. *Kern*, 34 Or. 247 (54 Pac. 950, 75 Am. St. Rep. 580), in which Mr. Justice BEAN, reviewing that doctrine, says: "In short, the master is liable for the negligence of an employee who represents him in the discharge of his personal duties toward his servants. Beyond this he is liable only for his own personal negligence. 'This,' as said by Judge DILLON, 'is a plain, sound, safe and practical line of distinction. We know where to find it, and how to define it. It begins and ends with the personal duties of the master. Any attempt to refine, based upon the notion of "grades" in the service, or, what is much the same thing, distinct "departments" in the service (which departments frequently exist only in the imagination of the judges, and not in fact), will only breed the confusion of the Ohio and Kentucky experiments, whose courts have constructed a labyrinth in which the judges who made it seem to be able to "find no end in wandering mazes lost." ' "

When the plaintiff's intestate went to obtain employment of the defendant she saw the situation. She knew that it involved the use of the elevator in question in going to and from her work. She knew that there was a possibility that the negligence of the eleva-

tor-man would injure her while using the elevator.
She must be held to have contracted with reference to
those elements of danger so apparent to any adult
observing them. In brief, the decedent was present
at the time of the accident solely in her character as
an employee of the defendant. She came within the
scope of the defendant's duty to furnish her a reason-
ably safe place of employment, necessarily including
the means of access to the place. Until it is shown to
have violated some duty in that behalf, either in pro-
viding an insufficient or dangerous elevator, or negli-
gently employing an incompetent man or retaining him
in its employment after it knew of his negligence, or
incompetency, it has violated no duty to her. She was
not a minor requiring *quasi*-parental care from her em-
ployer, but was an intelligent adult, presumably pos-
sessed of ordinary powers of observation. She had as
good opportunity as any officer of the company to ob-
serve the conduct of its other employee, the operator.
She knew the situation and the means of going to her
office as an incident of her employment, and she must
be presumed to have contracted with reference to the
risk necessarily involved in the possible negligence of
the operator. This is a basic reason of the rule about
the negligence of fellow-servants as shown by all the
authorities, and should control this case.

As said by Mr. Chief Justice LORD in *State* v. *Clark,*
9 Or. 466, 470: "*Stare decisis* is the policy of the
courts, and the principle upon which rests the author-
ity of judicial decisions as precedents in subsequent
litigation, and this doctrine ought not to be departed
from, except when subsequent examination shows the
case to have been decided contrary to principle": See,
also, *Multnomah Co.* v. *Silker,* 10 Or. 65; *Despain* v.
*Crow,* 14 Or. 404 (12 Pac. 806); *Everding* v. *McGinn,*
23 Or. 15 (35 Pac. 178).

Hence, however distressing the accident in the case at bar, we ought not to overturn the settled principles of the law and our own former opinions to favor the successors in interest of the deceased in this particular instance. For these reasons, I dissent from the conclusion reached by Mr. Chief Justice McBride on the two points first mentioned.

Mr. Justice Moore concurs in this dissenting opinion.